# United States Court of Appeals

*for the*

# Third Circuit

Case No. 24-2721

ARTEM V. GELIS; BHAWAR PATEL; CHRIS WILLIAMS; ASHOK PATEL; KENNETH GAGNON; MICHAEL CERNY; ANDRE MALSKE; NICOLE GUY; SUSMAN HEYMAN; DAVID RICHARDSON; DEBRA P. WARD; GREGORY HEYMAN; DARRIAN STOVALL; ERIC T. ZINN; ROBERT MCDONALD; AMANDA GOREY; JAMES V. OLSON; ALEX MARTINEZ; STACEY TURNER; MARIA MEZA,

*Plaintiffs-Appellees,*

– v. –

BMW OF NORTH AMERICA, LLC,

*Defendant-Appellant.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY IN CASE NO. 2-17-CV-07386 HONORABLE CATHY L. WALDOR

## BRIEF FOR PLAINTIFFS-APPELLEES

THOMAS P. SOBRAN
*(Admission Pro Hac Vice Pending)*
THOMAS P. SOBRAN, P.C.
Seven Evergreen Lane
Hingham, Massachusetts 02043
(781) 741-6075

BRUCE H. NAGEL
ROBERT SOLOMON
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400

GARY S. GRAIFMAN
KANTROWITZ, GOLDHAMER
  & GRAIFMAN, P.C.
135 Chestnut Ridge Road, Suite 200
Montvale, New Jersey 07645
(201) 391-7000

*Attorney for Plaintiffs-Appellees*

CP COUNSEL PRESS   (800) 4-APPEAL • (376820)

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

I.      INTRODUCTION ...........................................................................1

II.     FACTUAL BACKGROUND...........................................................2

        A.      The Underlying Action.........................................................2

        B.      The Attorneys' Fee Settlement Agreement...........................5

        C.      BMW Reneges on the Fee Agreement...................................6

        D.      The Third Circuit *Gelis* Decision.........................................7

        E.      The District Court's Review and Determination on Remand..............7

III.    SUMMARY OF ARGUMENT.......................................................14

IV.     ARGUMENT.................................................................................15

        A.      Standard of Review ...........................................................15

        B.      The Settlement Agreement Anticipated a Fee Multiplier ...................18

        C.      Class Action Fee Agreements in the Third Circuit are
                Analyzed under the *Lindy* Factors.....................................22

        D.      The District Court's Award of a Fee Multiplier was Proper as
                Class Counsel's Attorneys' Fees are the Result of a
                Contractual Fee Provision and are Not Subject to the *Perdue*
                Strictures...........................................................................24

        E.      The Lodestar Enhancement was Well Within the Range of
                Similar Fee Enhancement Awards ......................................30

        F.      The District Court Thoroughly Reviewed Class Counsel's
                Contemporaneous Billing Records together with Proposed
                Findings of Fact and then Convened Oral Argument on the
                Attorneys' Fee Request prior to Issuing a Well-Reasoned Fee
                Award Opinion ..................................................................32

                1.      The District Court Considered and Rejected BMW's
                        Timekeeper Task Assignment Argument ...................37

i

2. The District Court Considered and Properly Approved Class Counsel's Time as Productive and Tasks Appropriately Assigned ...........................................38

    a. Complaint Drafting........................................................41

    b. Case Development / Administration .............................43

    c. Motion Practice / Memorandum Drafting / Legal Research........................................................................44

    d. Negotiation / Settlement Process...................................45

    e. Discovery ......................................................................47

V. CONCLUSION................................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Apple Corps. Ltd. v. International Collectors Soc.*,
  25 F. Supp. 2d 480 (D.N.J. 1998) ............................................................40

*Bell v. U.S.B. Acquisition Co.*,
  734 So. 2d 403 (Fla. 1999) ................................................................ 21, 22

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989) .............................................................................27

*Brown v. 22nd Dist. Agric. Ass'n*,
  2017 U.S. Dist. LEXIS 115321 (S.D. Cal. July 21, 2017) ...................................11

*Bryan v. Erie Cty. Off of Child. & Youth*,
  637 F. App'x 693 (3d Cir. 2016) ............................................................19

*Brytus v. Spang & Co.*,
  203 F.3d 238 (3d Cir. 2000) .......................................................... 7, 25, 31

*Doherty v. Hertz Corp.*,
  Civil No. 10–359 (NLH/KMW), 2014 WL 2916494 (D.N.J. June 25, 2014) .....30

*Environsource, Inc. v. Horsehead Resource Dev. Co., Inc.*,
  981 F. Supp. 876 (S.D.N.Y. 1998) ..........................................................39

*Fox v. Vice*,
  563 U.S. 826 (2011) ........................................................................ 34, 35

*Frederick v. Range Res.-Appalachia, LLC*,
  2011 U.S. Dist. LEXIS 27350 (W.D. Pa. Mar. 17, 2011) ...................................12

*Gelis v. BMW of North America*,
  49 F.4th 371 (3d Cir. 2022) ........................................................... *passim*

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ........................................................... *passim*

*Hartman v. Pompeo*,
  Case No. 77-cv-2019 (APM), 2020 WL 6445873 n.8 (D.D.C. 2020) .................25

*Henderson v. Camden Co. Municipal Utility Auth.*,
  826 A.2d 615, 176 N.J. 554 (2003) ...........................................................5

*Hensley v. Eckerhart*,
   461 424 (1982)........................................................................................... 25, 35

*In re AremisSoft v. Cap. Securities Lit.*,
   210 F.R.D. 109 (D.N.J. 2002)...................................................................31

*In re Busy Beaver Bldg. Ctrs.*,
   19 F.3d 833 (3d Cir. 1994)................................................................. 39, 40

*In re Cendant Corp. Prides Litig.*,
   243 F.3d 722 (3d Cir. 2001).....................................................................31

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995).......................................................................37

*In re Home Depot Inc.*,
   931 F.3d 1065 (11th Cir. 2019)............................................................. 7, 25

*In re Linerboard Antitrust Litig.*,
   No. MDL 1261, Civ.A. 98–5055, Civ.A. 99–1000, Civ.A. 99–1341,
   2004 WL 1221350 (E.D. Pa. June 2, 2004)...........................................31

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) *cert. den.*, 525 U.S. 1114 (1998)............30

*In re Remeron Direct Purchaser Antitrust Litig.*,
   No. Civ.03–0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) .....31

*In re Vogue*,
   92 B.R. 717 (Bankr. E.D. Mich. 1988).....................................................43

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
   2018 U.S. Dist. LEXIS 247091 (D.N.J. Dec. 14, 2018) ........................11

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
   No. CV162765JLLJAD, 2018 WL 11413299 (D.N.J. Dec. 14, 2018) ......... 28, 30

*Institutionalized Juveniles v. Secretary of Public Welfare*,
   758 F.2d 897 (3d Cir.1985).......................................................................16

*Jefferson v. City of Camden*,
   2006 WL 1843178 (D.N.J. June 30, 2006)..............................................39

*Johnson v. Georgia Highway Exp., Inc.*,
   488 F.2d 714 (5th Cir. 1974).....................................................................27

*Johnson v. University College,*
    706 F.2d 1205 (11th Cir.)................................................................. 41, 47

*Kennan v. City of Phil.,*
    983 F.2d 459 (3d Cir. 1992).....................................................................16

*Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.,*
    540 F.2d 102 (3d Cir. 1976)............................................................ *passim*

*Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,*
    487 F.2d 161 (3d Cir. 1973)............................................................ *passim*

*MacDonald v. CashCall, Inc.,*
    883 F.3d 220 (3d Cir. 2018).....................................................................20

*Marisol A. v. Giuliani,*
    111 F. Supp.2d 381 (S.D.N.Y.2000) .........................................................39

*McKnatt v. Delaware,*
    369 F. Supp. 2d 521 (D. Del. 2004)..........................................................27

*Merola v. Atl. Richfield Co.,*
    493 F.2d 292 (3d Cir. 1974)........................................................ 22, 24, 26

*Merola v. Atl. Richfield Co.,*
    515 F.2d 165 (3d Cir. 1975)............................................... 17, 19, 26, 31

*Milliron v. T-Mobile USA, Inc.,*
    Civil Action No. 08–4149 (JLL), 2009 WL 3345762 (D.N.J. Sept. 10, 2009),
    *as amended* (Sept. 14, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011) ..................31

*Moreno v. City of Sacramento,*
    534 F.3d 1106 (9th Cir. 2008)..................................................................38

*Norman v. Hous. Auth. of Montgomery,*
    836 F.2d 1292 (11th Cir. 1988).................................................................47

*Pa. v. Del. Valley Citizens' Council for Clean Air,*
    478 U.S. 546 (1986) .................................................................................26

*Pacemaker Yacht Co., a Div. of Mission Marine v. N.L.R.B.,*
    663 F.2d 455 (3d Cir. 1981).....................................................................19

*Perdue v. Kenny A. ex. rel Winn,*
    559 U.S. 542 (2010) ..........................................................................1, 11, 26

*Pitchford v. PEPI, Inc.*,
    531 F.2d 92 (3d Cir. 1976)..................................................................... 24, 26

*Planned Parenthood of Cent. New Jersey v.*
    *Attorney General of State of New Jersey*,
    297 F.3d 253 (3d Cir. 2002)................................................................... 39, 46

*Rode v. Dellarciprete*,
    892 F.2d 1177 (3d Cir. 1990)................................................................. *passim*

*Rougvie v. Ascena Retail Grp., Inc.*,
    2016 U.S. Dist. LEXUS 122910 (E.D. Pa. Sept. 12, 2016)...............................42

*Silberman v. Bogle,*
    683 F.2d 62 (3d Cir.1982)...........................................................................16

*St. Joseph Abbey v. Castille*,
    2014 U.S. Dist. LEXIS 183990 (E.D. La. Nov. 21, 2014)...............................45

*Vargo v. Mangus*,
    94 Fed. App'x. 941 (3d Cir. 2004) .............................................................19

*Washington v. Phil. County Ct. of Common Pleas*,
    89 F.3d 1031 (3d Cir. 1996).........................................................................39

*Weiss v. Mercedes-Benz of No. Am., Inc.*,
    899 F. Supp. 1297 (D.N.J. 1995), *aff'd*, 66 F.3d. 314 (3d. Cir. 1995) ................31


**Statutes & Other Authorities:**

11 U.S.C. § 329(a).......................................................................................40

*3 Newberg & Conte, Newberg on Class Actions*, § 14.03 at 14-5 (3d ed. 1992) ....31

Fed. R. Civ. P. 9(b) .............................................................................. 4, 41

Fed. R. Civ. P. 12(b)(6) ...............................................................................42

Professional Conduct 1.5(a)..........................................................................29

Clean Air Act § 304(d)................................................................................26

*Hamlet*, Act III, Scene II ..............................................................................32

## I.    INTRODUCTION

BMW of North America, LLC ("Appellant" or "BMW") argued in its previous appeal of this case that the District Court could only properly decide the attorneys' fee motion after reviewing all of Class Counsel's contemporaneous time records.  The District Court did exactly that on remand.  Despite this, BMW now asks the Court to second-guess the District Court's factual findings and analysis in making its discretionary fee award, notwithstanding the District Court's careful and detailed compliance with the Third Circuit's remand order in *Gelis v. BMW of North America*, 49 F.4th 371 (3d Cir. 2022) ("*Gelis*").  The Third Circuit decision vacated the District Court's original fee award primarily because the billing summary charts submitted were deemed insufficient to support the attorney fee award.  The District Court was further directed to provide "additional reasoning" for its decision to add a lodestar multiplier. *Id.* at 381. On remand, the District Court was provided all of Class Counsel's detailed billing submissions organized by timekeeper, date, task performed and time incurred.  Judge Waldor rigorously reviewed the entire record and issued a reasoned decision awarding fees in the amount of $3.7 million.  BMW's arguments on appeal seek to rewrite the parties' negotiated Settlement Agreement, and disregard the *Gelis* remand instructions.

BMW ignores the District Court's correct holding that, because *Perdue v. Kenny A. ex. rel Winn*, 559 U.S. 542, 547 (2010) involved a statutory fee-shifting

case, and this case is based on a written fee agreement between the parties, *Perdue* does not apply to the lodestar and lodestar multiplier analysis performed on remand. The District Court acted well within its discretion in determining its fee award using the lodestar method and applying a modest 1.75 multiplier reflecting the complexity of the litigation, the quality of Class Counsel's work, the contingent nature of the case and the excellent result obtained for more than half a million class vehicle owners and lessees. Accordingly, the judgment should be affirmed.

## II.    FACTUAL BACKGROUND

### A.    The Underlying Action

Class Counsel filed this class action in September 2017 seeking a nationwide class or multi-state subclasses of owners and lessees of certain BMW vehicle models equipped with defective engine timing chains. (ECF No. 1). Prior to filing the initial complaint, Class Counsel undertook an extensive investigation of the BMW N20/N26 engines incorporated in class vehicles. This investigation included a detailed analysis of timing chain and oil pump drive chain assemblies including functionality and failure mechanisms. *See*, ¶ 7 of Joint Declaration of Gary S. Graifman, Thomas P. Sobran and Bruce H. Nagel in Support of Final Approval of Class Action Settlement ("Joint Declaration"). (SA145).[1] Other activities included

---

[1] The term "SA" refers to Plaintiffs-Appellees' Supplemental Appendix submitted in this appeal.

inspection of multiple exemplar engines, measurement and analysis of failed chain assemblies and a detailed examination of replacement component design and manufacturing changes. Materials reviewed included BMW workshop manuals, engine parts manuals and technical service bulletins for a wide range of BMW 4 cylinder turbocharged engines. Competitor vehicle engine and technical materials were also analyzed. Class Counsel regularly reviewed the National Highway Traffic Safety Administration ("NHTSA") Office of Defect Investigation website, including complaints and comments to NHTSA by BMW owners. (Joint Declaration, ¶ 7, SA145). Class Counsel also spoke with hundreds of class vehicle owners who experienced premature timing and oil pump drive chain assembly failure. (Joint Declaration, ¶ 36 at SA157).

A subsequent related class action was filed in November 2017. The two cases were consolidated in January 2018 and a Consolidated Amended Class Action Complaint and Jury Trial Demand ("CAC") was filed in March 2018. (ECF No. 22). The CAC asserted nationwide class claims and, alternatively, multi-state claims on behalf of twenty (20) named plaintiffs from 13 different states.[2]

In March of 2018, BMW moved to dismiss the CAC, raising unique issues as to statutes of limitations, failure to demonstrate fraudulent concealment, application

---

[2] The multi-state claims included New Jersey, New York, California, Illinois, Florida, Utah, Texas, Alabama, Oklahoma, Massachusetts, North Carolina, Wisconsin and Georgia warranty, negligence and consumer protection counts.

of the economic loss doctrine, limitations on the scope of the alleged class including opposition to the nationwide class, challenges under Fed. R. Civ. P. 9(b) as to the particularity of the pleadings and to elements of each state consumer protection law claim, implication of the discovery rule and equitable tolling, *inter alia*. (ECF Nos. 26, 34 and 36). Judge Walls entered an opinion and order on the motion to dismiss on October 30, 2018 that allowed the majority of Plaintiffs' claims to proceed. (ECF Nos. 42-43).

The Consolidated Second Amended Complaint and Jury Trial Demand ("SCAC") was filed in February 2019. (A64-A209). Thereafter, Class Counsel engaged in discovery that resulted in the production of thousands of highly technical documents, class vehicle service records and related materials, which were neither indexed nor organized when produced. Discovery also involved negotiations to dismiss Appellant's German parent Bayerische Motoren Werke Aktiengesellschaft provided it agreed to produce certain specified categories of documents and provide deposition testimony. The winnowing of the categories of documents to be produced was the subject of extensive back-and-forth negotiations.

After complicated motion practice and during highly technical discovery into the engine defect alleged, the parties entered into mediation. Class Counsel were successful in negotiating an extremely favorable and broad ranging nationwide class settlement which involved extending the N20/N26 engine warranty to 100,000 miles

and 8 years, for approximately 575,000 vehicles and 1,200,000 owners and lessees.

The settlement's engine warranty extension has, to date, resulted in more than $16

million ($16,000,000) in financial recovery for consumers in reimbursements for

repairs and/or payments made by BMW for class members' prospective repairs

covered by the warranty post-settlement. (SA74).[3]

### B.    The Attorneys' Fee Settlement Agreement

Although multiple fee mediations did not resolve with an agreement as to the

attorneys' fees, the parties entered into a "high-low" agreement under which they

agreed to submit to the District Court the contested motion for an award between a

"low" of $1.5 million and a "high" of $3.7 million.  *See* Settlement Agreement,

§VIII.B. (SA130).  The Settlement Agreement authorized the District Court to rule

on the "final evaluation and decision of the exact amount of attorneys' fees, inclusive

of costs, expenses and Settlement Class Representatives Service Payments that

---

[3] At oral argument on the post-remand motion for attorneys' fees held September 26, 2023, BMW's counsel conceded on the record the prospective repairs under the extended warranty equaled approximately $13 million. (SA74). This was in addition to the $3 million in reimbursements, thus totaling $16 million.  Because this settlement administration is now complete with the exception of additional prospective warranty repairs to be made, the parties and the Court now have the benefit of the scope of the fund-in-court made available to the class under the settlement. *E.g., see, Henderson v. Camden Co. Municipal Utility Auth.*, 826 A.2d 615, 176 N.J. 554, 564 (2003) (allowing attorneys' fees to be paid because "[t]he fund in court exception generally applies when a party litigates a matter that produces a tangible economic benefit for a class of persons that did not contribute to the cost of the litigation").

should reasonably be awarded in this case, within the $1,500,000 to $3,700,000 range agreed upon by the Parties." Settlement Agreement, §VIII, subdiv. C. (SA130).

The Settlement Agreement recited "any disputes regarding the meaning of the terms and conditions of this Settlement Agreement, the Parties' rights and obligations under this Settlement Agreement, or the manner in which any issue or dispute arising under this Settlement Agreement should be resolved, ***will be submitted to the court for resolution***." Settlement Agreement § X, subdiv. O (emphasis added). (SA138).

### C.     BMW Reneges on the Fee Agreement

After the District Court awarded $3.7 million in attorney's fees in May 2021, BMW reneged on the Settlement Agreement terms. BMW, using as cover the excuse that, *first*, in a class action, the fee should be demonstrated to the court with reasonable specificity and that Class Counsel failed to properly document its fee request with the specificity required and that, *second*, in addition, a multiplier was improper. Notably, BMW was aware, at the time the Settlement Agreement was entered into, that Class Counsel would seek a multiplier of their lodestar since, as BMW's counsel conceded BMW was aware that Class Counsel's lodestar at the time the high-low agreement was entered was substantially less than the $3.7 million "high" which Class Counsel intended to apply for. (SA91-SA94). Based upon that

understanding, Class Counsel agreed to limit the upper end of their application to $3.7 million, in return for such tangible agreement on fees. *Id*.

### D. The Third Circuit *Gelis* Decision

This Court remanded the attorneys' fee application to the District Court after holding that the billing charts submitted by Class Counsel were not "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Gelis*, at 379-380 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (internal quotation marks omitted)). With respect to the lodestar multiplier, this Court held the District Court should "provide additional reasoning for its decision whether to add a lodestar multiplier." *Id.* at 381. This Court also provided the following advisory concerning the lodestar multiplier issue at 381:

> We . . . note two things for the parties and the Court to consider on remand. First, we think the parties' focus on the statutes under which named plaintiffs sued is misplaced, as the "Court awarded the attorney's fees pursuant to a contract—the settlement agreement—not pursuant to a statute." *In re Home Depot Inc.*, 931 F.3d 1065, 1082 (11th Cir. 2019); *see also Brytus v. Spang & Co.*, 203 F.3d 238, 246 (3d Cir. 2000) ("When there has been a settlement, the basis for the statutory fee has been discharged, and it is only the fund that remains.").

### E. The District Court's Review and Determination on Remand

The District Court faithfully followed this Court's remand instructions. The District Court requested Class Counsel submit their contemporaneous billing records, all of which were provided. (A703-A982) (filed under seal).

Class Counsel submitted voluminous daily billing records documenting 2,876.55 hours of work performed on the case for Judge Waldor's review prior to the remand fee approval hearing. The parties also each submitted extensive Proposed Factual Findings and Conclusions of Law ("FoFCoL").[4] Class Counsel demonstrated why the work performed for the various tasks was necessary, reasonable and non-duplicative. BMW argued the entries indicated much of the time spent by Class Counsel was unreasonable and duplicative. In all of these documents, the Court had a full exposition of the facts, the contemporaneous time records and complete and extensive briefing on the issues and case law.

On remand, BMW raised for the first time a challenge to the hourly rates charged by Class Counsel. In response, Class Counsel submitted the Declaration of Bruce D. Greenberg, Esq. ("Greenberg Declaration"), a highly experienced New Jersey class action attorney and partner at Lite DePalma Greenberg & Afanador, LLC. (A677-A699). The Greenberg Declaration demonstrates even if the Court entertained this previously unchallenged afterthought, the hourly rates of Class Counsel were clearly within market rates for the District of New Jersey. BMW did not rebut the Greenberg Declaration.

The parties appeared for oral argument before the District Court on the

---

[4] Plaintiffs' FoFCoL is reprinted at A168-A518. Defendant's FoFCoL is reprinted at A521-A581. Plaintiffs' Reply FoFCoL is reprinted at A582-A674.

8

attorneys' fees motion in September 2023. (SA1). Thereafter additional information and argument was provided in BMW's counsel's letter of September 29, 2023 (SA91-92) and Class Counsel's letter of October 3, 2023. (SA93-SA95). BMW, *inter alia,* corrected the record by conceding it knew *before entering* into the high-low fee agreement that Class Counsel's lodestar was less than the $3.7 million fee Class Counsel intended to request. (SA91-SA92).

On August 16, 2024, the District Court rendered its post-remand 28-page Opinion and Order ("Opinion") in which it meticulously analyzed and discussed the legal work performed by Class Counsel as described in contemporaneous time records. (A5-A32). The Court addressed, *seriatim*, each of BMW's challenges to Class Counsel's fees including arguments that work performed was unreasonable based on the time records. The District Court reviewed the time records, proposed FoFCoLs, memoranda, declarations and other materials from all parties and heard oral argument prior to rendering the Opinion. Notably, Judge Waldor had also overseen the litigation, including convening over twelve court conferences and addressing numerous discovery issues and was well-acquainted with the legal work performed by Class Counsel.[5] The District Court excluded post-hearing work in its

---

[5] *See* docket entries at 05/23/18; 09/11/18; 12/03/18; 03/15/19; 04/10/29; 09/16/19; 10/31/19; 12/12/19; 02/14/20; 03/16/20; 09/02/20; 11/20/20; and 2/16/21. (A46-A56). For various discovery issues brought before Judge Waldor, *see* docket entries for 11/23/20 and ECF Nos. 164, 165.

fee calculus and then concluded that the hours expended were reasonable and supported a lodestar of $2,087,283.25. Applying a 1.75 multiplier, the Court reaffirmed the original $3.7 million award. *Id.*

In its analyses, the District Court religiously followed the guidelines set out by the Third Circuit's previous decisions including *Rode v. Dellarciprete,* 892 F.2d 1177 (3d Cir. 1990)*; Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1976) ("*Lindy II*"); *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190 (3d Cir. 2000) and *Gelis, supra.*

The District Court comprehensively scrutinized time expended by Class Counsel for each activity category challenged by BMW, including Pre-Litigation Investigation (A15); Drafting of Complaints (A16); Case Development/Administration (A17-A18); Motion Practice/Memorandum Drafting/Legal Research (A18-A19); Negotiations and Settlement Process (A19-20); Discovery (A20-A21); Court Hearings/Appearances (A21). The court even analyzed the "Non-Challenged Categories" (A21-A23) including Post-Filing Investigation; Communications with Class Members; Communications with Consultants and Experts; Settlement Documentation and Briefing (*e.g.,* Preliminary and Final Approval); Class Administration Issues; and addressing objections to final approval. The District Court also addressed other arguments that BMW quibbled about such as communications between and among Class Counsel and use of

partners' specialized knowledge and experience to engage in certain tasks, which were necessary given the complex nature of the subject matter. (A23-A24).

With respect to the lodestar multiplier, the Court rejected BMW's erroneous assertion that *Perdue* applied, noting cases cited by BMW were statutory fee-shifting cases, which, as *Gelis* made clear, this case was not. (A28). The District Court set out in detail its basis for awarding the lodestar multiplier, stating, in part:

> Class Counsel consists of three highly regarded plaintiffs'-side law firms who managed to negotiate a settlement involving hundreds of thousands of potential class members from dozens of states in a relatively short period of time and without the need for, and attendant risks of, class certification briefing. The settlement required Class Counsel from the outset of the case to navigate technical issues relating to numerous models of BMW vehicles, and Class Counsel has expended (and represents continues to expend) considerable efforts to ensure the class members obtain the benefits of the settlement.
>
> Naturally, Class Counsel faced a risk of nonpayment when it opted to take the case on a contingency basis. This has required them to incur case-related expenses and, more significantly, devote valuable attorney time to this matter — and as a result, away from other matters — notwithstanding the risk that no recovery would be obtained. This weighs strongly in favor of a multiplier. *See, e.g.*, *Brown v. 22nd Dist. Agric. Ass'n*, 2017 U.S. Dist. LEXIS 115321, at \*22 (S.D. Cal. July 21, 2017) (where "significant financial risk of nonpayment was evident from the outset of the case as Class Counsel took this matter on contingent basis", court found "the risk of nonpayment weighs in favor of an upward adjustment to the fee award").
>
> A review of similar cases supports Class Counsel's requested multiplier. Starting first with the overall fee award Class Counsel cites *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2018 U.S. Dist. LEXIS 247091 (D.N.J. Dec. 14, 2018), a case involving similar timing chain failures and a similar class size, where Judge Linares awarded plaintiffs' counsel (including one firm representing Plaintiffs here) $8.5

11

million. *See id.* at *14. Class Counsel in that action expended 7,377 hours litigating the matter, *see* Civil Action No. 16-2765 (JLL) (JAD), Dkt. No. 106-2 at ¶ 39, and thus was awarded $1,152 per hour. This figure is comparable to the $1,286 per hour that will be awarded to Class Counsel here. If one corrects for the number of potential class members (477,000 in *VW* and 575,000 here), the proportions are close to identical. And as to the multiplier, "[f]ederal courts in this circuit have frequently approved fee award multipliers in the range of 1 to 4"; and even "[m]ultipliers in excess of this range, while warranting enhanced scrutiny, are not completely unusual." *Frederick v. Range Res.-Appalachia, LLC*, 2011 U.S. Dist. LEXIS 27350, at *36 (W.D. Pa. Mar. 17, 2011) (collecting cases; awarding 5.95 multiplier). Class Counsel's requested multiplier is on the low end of this range, and therefore is reasonable.

(A30-A31).

The District Court concluded:

In sum, the referenced factors strongly support approving Class Counsel's requested lodestar multiplier. They reflect the fact that highly skilled Class Counsel litigated this complex and technical case swiftly and efficiently, obtaining a settlement that conferred concrete benefits upon more than a half million potential class members. Considering the considerable efforts that went into (and continue to go into) this result, the Court finds it fair and reasonable to apply a 1.75 multiplier, one well within the range of acceptable multipliers in this circuit.

(A31-A32).

The District Court understood the unique nature a complex class action claims-made settlement involving automotive defect classes entails. (A25-A26). *See also* A190 at ¶¶ 100-110; A202-A207. In these types of cases, defendants insist that class members submit a multitude of documents to prove vehicle ownership; manifestation of the defect in the form of failure; proof of payment for a qualifying

repair; mileage and years-in-service at the time of failure; and proof that the scheduled maintenance was reasonably followed. (A202-A204). While the third party claims administrator was responsible for initial review here, it was Class Counsel that bore the brunt of extensive interaction with class members who had documentation questions, resolving unique circumstances which inevitably arose, and participating in the internal appeals process if the claim was denied (which involved Class Counsel and BMW's counsel review of claims in an "attorney review" process which took months to complete). Class Counsel extensively participated in facilitating repairs performed at authorized dealerships as required under the extended warranty. *Id*. Many authorized BMW dealerships refused to honor the warranty resulting in involvement of Class Counsel or their staffs to obtain compliance. (A205, ¶ 35; A416-A441). Elizabeth Moccia ("Moccia"), a paralegal at Kantrowitz Goldhamer & Graifman was tasked as the point person on most class member inquiries. She devoted 1,212.60 hours to the claims administration process. (A21; *see also* Graifman Declaration, ¶16 at A199 and at Exh. 4 at A219-A450). Moccia's time expended was greater than the number of hours any one partner or associate at any of the three firms spent in the case demonstrating Class Counsel's adherence to an efficient division of labor in accomplishing necessary work. (A199; A455; A513).

Although Judge Waldor did not credit any of Class Counsel's post-approval

time in calculating the lodestar, some acknowledgement as to the unique circumstances, and to the devotion of substantial resources by Class Counsel to ensure that class members receive the fought-for benefits of the settlement should be taken into account. BMW received the benefit of the exclusion of that time from the lodestar because it resulted in a substantial reduction of the lodestar that Judge Waldor allowed, notwithstanding BMW's acknowledgement the time was spent by Class Counsel in ensuring settlement class members received settlement benefits.

### III.    SUMMARY OF ARGUMENT

1.    The District Court correctly interpreted the Settlement Agreement as authorizing an attorneys' fees award up to $3.7 million. The Settlement Agreement did not preclude the use of a lodestar multiplier, and nothing in this Court's *Gelis* decision prohibited its use on remand.

2.    On remand, Class Counsel submitted hundreds of pages of detailed, contemporaneous time records. The District Court engaged in precisely the "thorough review" mandated by this Court and found the time expended and the work performed reasonable.

3.    The 1.75 lodestar multiplier applied by the District Court is justified under the Third Circuit decisional law (including the *Lindy II, Merola, Gunter/Prudential* framework). Class Counsel achieved an excellent

14

result in a technically complex case and assumed significant contingent risk. The fee awarded is in line with precedent and not a windfall.

## IV.   ARGUMENT

### A.   Standard of Review

The Third Circuit stated in *Lindy II* that "[i]f the district court has applied the correct criteria to the facts of the case, then it is fair to say that we will defer to its exercise of discretion." *Lindy II,* 540 F.2d at 116 (internal quotation omitted). While the question of whether the district court applied the proper standards or procedures is a question of law, "[t]he district court's factual findings are reviewed under a clearly erroneous standard." *Rode*, 892 F.2d at 1182-83. Thus, the abuse of discretion standard applies to determination of the fee award as long as the court has applied the appropriate standards. *Lindy II*, 540 F.2d at 116; *Gunter*, 223 F.3d at 195-96 ("We give great deal of deference to a district court's decision to set fees.").

A fee petition "is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Rode*, 892 F.2d at 1190 (internal quotation omitted). A fee petition should include "'some fairly definite information as to the hours devoted to various general activities, *e.g.* pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, *e.g.*, senior partners, junior partners, associates.' However, 'it is not necessary to know the exact number of minutes spent nor the precise activity to

which each hour was devoted nor the specific attainments of each attorney.'" *Kennan v. City of Phil.*, 983 F.2d 459, 473 (3d Cir. 1992) (quoting *Rode*, 892 F.2d at 1190); quoting *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973) ("*Lindy I*"). "[C]ontemporaneous recorded time sheets are the preferred practice." 983 F.2d at 472. Class Counsel provided detailed contemporaneous time records on remand to the District Court, records the Court fully reviewed.

The District Court had substantial discretion in performing its analysis and awarding a fee. Indeed, this Court has held: "We review the reasonableness of an award of attorney's fees for an abuse of discretion. . . . An abuse of discretion can occur when no reasonable person would adopt the district court's view. *Silberman v. Bogle*, 683 F.2d 62 (3d Cir.1982)." *Rode*, 892 F.2d at 1182–83 (citing *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 909 n.21 (3d Cir.1985)).

With regard to the lodestar multiplier, in *Lindy I*, the Third Circuit emphasized that the district court should consider two primary factors in deciding on whether to increase the lodestar with a multiplier: the "contingent nature of success . . . [where] the attorney has no private agreement that guarantees payment even if no recovery is obtained" and "the extent, if any, to which the quality of an attorney's work mandates increasing or decreasing the amount to which the court has found the

16

attorney reasonably entitled." *Id.* at 168-69. *See also*, *Lindy II*, 540 F.2d at 112 ("*Lindy I* instructs that, in addition to the 'lodestar', the court's computation of the value of attorneys' services should reflect two other factors [which are] the contingent nature of success and the quality of the attorney's work."). The Third Circuit expanded on that holding in *Merola v. Atl. Richfield Co.*, 515 F.2d 165, 168 (3d Cir. 1975) ("*Merola II*") stating that the second factor (quality) is "evidenced by the work observed, the complexity of the issues and the recovery obtained." *See also, Lindy II,* 540 F.2d. at 112 (discussing *Merola II*).

The District Court followed settled law in providing her cogent reasons for employing a lodestar multiplier. *See infra* at Section IV.B. In addition, for the sake of completeness and to the extent the factors in *Gunter* were relevant, the District Court discussed those factors as well in determining the lodestar multiplier. *See infra* at § IV.D.

The Third Circuit pointed out in *Merola II,* that an upward award may also be justified "to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients ***with a minimum of time invested . . .*** " *Id.,* 515 F.2d. at 168-69 (emphasis added). Thus, there is no necessity for the litigation to be a lengthy battle in order to receive a lodestar multiplier.

Finally, with regard to BMW's attempt to nitpick the time entries and tasks accomplished, the Court in *Lindy II* responded to this exact challenge in making the

admonition:

> We . . . do not intend that a district court, in setting an attorneys' fee, become enmeshed in a meticulous analysis of every detailed facet of the professional representation. It was not and is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps even dwarfing the case in chief. Once the district court determines the reasonable hourly rates to be applied, for example, it need not conduct a minute evaluation of each phase or category of counsel's work.

540 F.2d at 116-17.

With this second appeal, BMW now requests this Court perform exactly that unnecessary inquiry into every billing detail.

## B.    The Settlement Agreement Anticipated a Fee Multiplier

BMW's argument that the attorneys' fee provision in the Settlement Agreement does not provide for a fee multiplier is demonstrably disingenuous. As previously discussed, the Settlement Agreement included a fee high-low provision ranging between $1.5 million and $3.7 million. At the time the Settlement Agreement was entered into, BMW was well aware the lodestar was significantly *less* than the $3.7 million fee ceiling. *See*, SA91 (BMW's admission that during the fee negotiation in November 2019, "class counsel did provide a lump-sum estimate of their lodestar at that time."). BMW unequivocally knew that a multiplier would be requested since the $3.7 million fee request could only be attained by means of a lodestar multiplier. Despite numerous challenges to the fee award, the record is devoid of any certification from BMW's counsel that he was ***not*** aware that the

lodestar was far less than the $3.7 million high sought by Class Counsel, or that the District Court was barred from using a multiplier. In fact, the Settlement Agreement expressly bestowed upon the District Court authorization to interpret any issues, disputes, rights or obligations under the agreement. (SA138 at subdiv. O). An award of a lodestar multiplier was not excluded from the authority delegated to the District Court. The District Court was entitled to award a multiplier under the Settlement Agreement in accordance with controlling case law.[6]

BMW's assent to a fee multiplier is also consistent with the context of the attorneys' fee provision in the Settlement Agreement. This is because absent agreement to use a fee multiplier, inclusion of a "high," far in excess of the lodestar is rendered a nullity, as it could *never* be achieved without a multiplier. It is black letter law that a court must construe an agreement to give meaning to all its provisions so that no clause is rendered meaningless or superfluous. *See, e.g.,* *Pacemaker Yacht Co., a Div. of Mission Marine v. N.L.R.B.*, 663 F.2d 455, 459 (3d Cir. 1981) (quotation omitted) (it is the "settled rule of contract interpretation that

---

[6] The fact that the parties narrowed the range of the fee to a "high-low" agreement doesn't alter the analysis. Consistent with *Merola I* and *II*, the Third Circuit in *Gelis* confirmed that a high-low agreement itself would be an enforceable agreement provided that the District Court's analysis in awarding fees thereunder complied with the standards required under *Merola, Lindy* and *Gunter*. *See also, Bryan v. Erie Cty. Off of Child. & Youth*, 637 F. App'x 693, 694 (3d Cir. 2016) (court rejected plaintiff's attempt to void "'high-low' settlement agreement"); *Vargo v. Mangus*, 94 Fed. App'x. 941, 943 (3d Cir. 2004).

contract language should not be interpreted to render the contract promise illusory or meaningless"); *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 229 (3d Cir. 2018) (same).

All the foregoing is also consistent with the plain language of the Settlement Agreement. *See*, *e.g.*, *MacDonald*, 883 F.3d at 228 (courts should enforce contracts as parties intended as manifest by their plain language). The fee provision explicitly provides that Defendants will pay Class Counsel's attorneys' fees "***subject to the limitations contained herein.***" *See* SA129-30, § VIII.A. (emphasis added). Subject to the cap of $3.7 million, there is ***no*** limitation on using a lodestar multiplier set out in the Settlement Agreement – nor is Appellant able to point to one. The Settlement Agreement provides:

> C.      As part of resolution of the Action, the Parties have agreed That Settlement Class Counsel may apply to the Court for an award of attorneys' fees, inclusive of costs, expenses, and Settlement Class Representative Service Payments, and that Defendant may object to or oppose that application, although Defendant will not object to Settlement Class Counsel's application for an award of attorneys' fees, inclusive of costs, expenses, and Settlement Class Representative Service Payments up to $1,500,000 in the aggregate. While not agreeing to the total number of such an award, the Parties have agreed that Settlement Class Counsel may apply for an award of attorneys' fees, inclusive of costs, expenses, and Settlement Class Representative Service Payments not to exceed $3,700,000 in the aggregate. The Parties further agree that Settlement Class Counsel will not seek payment of any amount for any fees, inclusive of costs, expenses, and Settlement Class Representative Service Payments in excess of $3,700,000 if awarded by the Court. Defendant, while reserving the right to respond to Plaintiffs' fee motion, will not encourage or assist any third party in opposing Settlement Class Counsel's request for attorneys' fees, inclusive of

20

costs, expenses, and Settlement Class Representative Service Payments between $1,500,000 and $3,700,000 in the aggregate.

> D.    The Parties agree to submit the issue of attorneys' fees, inclusive of costs, expenses, and Settlement Class Representative Service Payments to Magistrate Judge Cathy L. Waldor for final evaluation and decision of the exact amount of attorneys' fees, inclusive of costs, expenses, and Settlement Class Representative Service Payments that should reasonably be awarded in this case, within the $1,500,000 to $3,700,000 range agreed upon by the Parties.

SA130, §§ VIII.B-C.

Nothing in the Settlement Agreement language even remotely hints at prohibiting a lodestar multiplier. What's more, Appellant's argument that anything not expressly permitted is immediately prohibited – an argument made in conclusory manner without any citations to authority – has been rejected before in this context. In *Bell v. U.S.B. Acquisition Co.*, 734 So. 2d 403, 405 (Fla. 1999), at issue was a contractual provision of a promissory note that provided for "a reasonable attorney's fee" and was silent on the use of a contingency risk multiplier. The defendant-buyer argued that "where a contract is silent on the issue of a multiplier, allowing the court to consider a multiplier results in the court rewriting the parties' contract." This is what BMW erroneously argues here. *Id.* at 406; Db 18 n.7.[7] The Supreme Court of Florida rejected this argument, ruling that:

> The contract in this case provided only for an award of "reasonable attorney's fees." ***Therefore, our decision [to allow use of a multiplier] does not rewrite the contract, but only authorizes the use of***

---

[7] References to "Db" are to Defendant-Appellant's opening appeal brief.

> *established criteria for the court to follow in determining a reasonable*
> *fee award*… The trial court should not have been precluded from
> considering a contingency multiplier.

*Bell*, 734 So. 2d at 412 (emphasis added).  The same principle is equally applicable

here.  The District Court employed established criteria including a fee multiplier to

determine a "reasonable" attorneys' fee in the context of a class action in this

jurisdiction.

## C.    Class Action Fee Agreements in the Third Circuit are Analyzed under the *Lindy* Factors

The Third Circuit set out factors to be considered in determining a fee for class

counsel in *Lindy I.*  Those factors were further explained and expounded upon in

*Lindy II* and *Gunter.*  The fact that this case involves an agreement to pay fees and

*Lindy* involved a common fund doesn't change the analysis.  Third Circuit precedent

has been clear on that point.  In *Merola v. Atl. Richfield Co.,* 493 F.2d 292 (3d Cir.

1974) ("*Merola I*")*,* the court was faced with a similar circumstance.  There, as here,

the class action was settled without a common fund.  Based on an agreement between

class counsel and defense counsel, defendants agreed to pay attorneys' fees.

However, as here, the fee amount was contested.

The Third Circuit held that the four factors from *Lindy I* are to be considered

in such a circumstance, regardless of the absence of a common fund.[8]  *Id.,* 493 F.2d

---

[8] The factors are: (a) the number of hours spent; (b) reasonable hourly rate for
counsel; (c) The contingent nature of success; and (d) the quality of counsels' work.

22

at 297. No exceptional circumstances were required there and none should be required here. In *Merola,* the basis for payment of attorneys' fees derived from the settlement agreement, as here. The court made clear that the district court must assess the lodestar based on the *Lindy I* factors in a contested fee petition, including the two factors used in deciding on whether to apply a multiplier. The Third Circuit stated:

> *Lindy* is, in some respects, distinguishable from the instant case. Unlike the arrangement between the parties herein, in *Lindy* there was no enforceable agreement relating to attorneys' fees. The predicate for the award of fees in *Lindy* thus was not, as here, an agreement, but rather was the benefit bestowed upon the class in the form of a common fund.

*          *          *

> We see no reason why the *Lindy* standards need be confined to situations in which benefit analysis (as distinct from an agreement to pay attorneys' fees) supplies the quasi-jurisdictional predicate. The *Lindy* standards isolate the primary factors that should be examined in developing a reasonable attorneys' fee. The first two factors (time spent and reasonable rate) produce what might be considered the market value of the attorneys' services. The latter two (risk and quality of work) permit the district judge the needed flexibility to tailor the award to the actual performance of counsel [*e.g.*, in order to apply an enhancement]. The end result— an amalgam of expected value and delivered performance— represents a reasonable fee under normal circumstances. Given the suitability of the *Lindy* standards to the determination of reasonable fees, ***we hold that in enforcing an agreement to pay reasonable attorneys' fees, courts in this circuit should apply the Lindy standards to determine the amount of the award***.

---

The latter two factors concern whether an upward or downward fee adjustment is to be calculated. *Lindy I*, 487 F.2d at 167-69.

23

*Merola I*, 493 F.2d at 297-98 (emphasis added); *see also Pitchford v. PEPI, Inc.*, 531 F.2d 92, 110 (3d Cir. 1976) (following *Merola* and *Lindy* to award of attorneys' fees pursuant to a settlement agreement).[9]

The same factors required by *Lindy* for a multiplier were applied to a lodestar fee analysis in *Merola* where the fee was based on a settlement agreement and where no common fund was present. Those latter two factors are (i) the contingent nature of the engagement, and (ii) quality of the work and benefit conferred – the exact same factors as used by Judge Waldor here. In fact, in *Merola* the Third Circuit found a benefit conferred by the mere extensions of the franchise leases that resulted from the class settlement. There were no other tangible benefits. Here the tangible benefits acknowledged by BMW are in excess of $16 million ($16,000,000). This is in addition to the intrinsic value attributed to the underlying warranty extension plaintiffs' unrebutted valuation expert determined was in the amount of $27 million. (Opinion at A29).

> **D.**  **The District Court's Award of a Fee Multiplier was Proper as Class Counsel's Attorneys' Fees are the Result of a Contractual Fee Provision and are Not Subject to the *Perdue* Strictures**

Following the guidance this Court provided, the District Court correctly ruled that "application of fee award analysis deriving from the statutory context would be

---

[9] Revealingly, while BMW mentions *Merola* at Db 19, it is otherwise silent and fails to discuss, explicate or analyze it anywhere in its brief.

inappropriate." (A28, citing *Gelis,* 49 F.4th at 381).  Accordingly, the District Court

adopted the Eleventh Circuit's conclusion in *In re Home Depot Inc.* which recites in

relevant part:

> There is no question that the Supreme Court precedents
> stretching from *Hensley* to *Perdue* are specific to fee-shifting
> statutes … These cases were about interpreting statutory
> language … Thus, these precedents are not binding outside of the
> statutory context.

(Opinion at A28) (quoting *In re Home Depot,* 931 F.3d 1065, 1084-85 (11th Cir.

2019) (citations omitted)); *see also Hartman v. Pompeo*, Case No. 77-cv-2019

(APM), 2020 WL 6445873, at *8 n.8 (D.D.C. 2020) ("It bears noting that simply

because parties agree to a *contractual* fee-shifting arrangement does not mean that

the law concerning *statutory* fee-shifting automatically applies.") (emphasis in

original).  As this Court also pointed out in *Gelis*, 49 F.4th at 381, this conclusion is

also in accord with Third Circuit precedent, which has held that "[w]hen there has

been a settlement, the basis for the statutory fee has been discharged, and it is only

the fund that remains," quoting *Brytus v. Spang & Co.*, 203 F.3d 238, 246 (3d Cir.

2000).  Accordingly, Appellant's reliance on the *Perdue* factors to argue against

application of a multiplier is simply misplaced.  BMW's assertion that the lodestar

is "presumptively sufficient," enhancements are rare, and "an enhancement may not

be awarded based on a factor that is subsumed in the lodestar calculation" is plainly

wrong.  *Perdue* only addressed fee awards under the federal civil rights fee-shifting

statutes which have a wholly different body of case law on the issue of fee awards. For the same reason, BMW's reliance on *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986) is severely misplaced. That case also involved awarding fees under a federal fee-shifting statute, § 304(d) of the Clean Air Act. *See* 478 U.S. at 557-558.

The Supreme Court in *Perdue* clearly "reject[ed] any contention that a fee determined by the lodestar method may not be enhanced in any situation. The lodestar method was never intended to be conclusive in all circumstances." *Perdue*, 559 U.S. at 553. Rather, enhancements are permitted when "the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 554.

And as noted above, this Court has recognized in *Gelis* and previous decisions such as *Merola I, Merola II* and *Pitchford*, what the proper analysis is where the fee derives from a settlement agreement but where the amount of the fee is contested. Clearly, the factors explicated by the Third Circuit in *Lindy I* and *II*, and by extension *Gunter*, for determining the lodestar and lodestar enhancement are to be used by the district court when the lodestar is based on an agreement to pay the fees. That analysis includes use of the factors laid out there for determining the lodestar and whether an enhancement is warranted. The *Perdue* analysis is antithetical to those

26

factors.[10] BMW's proposed analysis is simply inapplicable to an award of fees under a settlement agreement.

In addition to using the *Lindy* enhancement factors (*e.g.*, contingent nature of the case and the quality of the work of counsel), the District Court properly analyzed the lodestar enhancement under the factors set forth by the Third Circuit in *Gunter*, 223 F.3d at 195 n.1 – as well as taking "a global, holistic approach." (A29) (quotation omitted). The District Court found use of a multiplier was warranted based on multiple factors:

1)  The fund consists of more than 575,000 vehicles whose owners are eligible for warranty extension, which was estimated by Plaintiffs' expert to be valued at $27 million.[11] Based on this figure, $3.7 million represents 13.7% of the amount recovered – far less than Class Counsel's standard one-third contingency fee. (A29 – A30). Using BMW's own figures for the reimbursement payments and warranty work made to class members of $16 million (SA74), the $3.7 million represents a modest 23% of $16 million.

2)  The settlement includes "innovative" terms "consisting of contributions by BMW for timing chain repairs depending on vehicle age and mileage, providing for both reimbursement for

---

[10] BMW also mistakenly cites *McKnatt v. Delaware*, 369 F. Supp. 2d 521 (D. Del. 2004) to support its position that no enhancement of the lodestar is appropriate under the circumstances. (Db 30). This ruling, however, was predicated on that court's review of the *Johnson* factors set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). The *Johnson* factors analysis was abrogated in *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

[11] BMW's attack on Plaintiffs' expert's conclusions should be disregarded as "it has not substantively refuted these findings by way of a competing expert report." (Opinion at A25; Db at 26 n.11).

past repairs and provision of prospective ones," with class members obtaining a 42% increase in the mileage limitation of the initial settlement warranty extension. (Opinion at A30).

3)   Out of hundreds of thousands of potential class members, only forty-five members objected to the settlement, and none of the objections were sustained by the district court. (Opinion at A30).

4)   "Class counsel consists of three highly regarded plaintiffs'-side law firms who managed to negotiate a settlement involving hundreds of thousands of potential class members from dozens of states in a relatively short period of time and without the need for, and attendant risks of, class certification briefing." (Opinion at A30). "Class Counsel litigated this complex and technical case swiftly and efficiently." (Opinion atA31).

5)   The settlement required Class Counsel "to navigate technical issues relating to numerous models of BMW vehicles." (Opinion at A30).

6)   Class Counsel "has expended (and represents continues to expend) considerable efforts to ensure the class members obtain the benefits of the settlement." (Opinion at A30).

7)   Class Counsel "faced a risk of nonpayment when it opted to take the case on a contingency basis. This has required them to incur case-related expenses and, more significantly, devote valuable attorney time to this matter – and as a result, away from other matters – notwithstanding the risk that no recovery would be obtained." (Opinion at A30).

8)   A review of similar cases supports Class Counsel's requested multiplier. Starting with the overall fee award, this case is comparable to *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. CV162765JLLJAD, 2018 WL 11413299, at *4 (D.N.J. Dec. 14, 2018) – a case involving similar timing chain failures and a similar class size – where plaintiffs' counsel (including one firm representing Plaintiffs here) were awarded over $8.5 million. Class counsel was awarded $1,152 per hour in that action, which

28

is comparable to the $1,286 per hour awarded here. "[T]he proportions are close to identical. (Opinion at A31).

As to the multiplier, "[f]ederal courts in this circuit have frequently approved fee award multipliers in the range of 1 to 4"; and even "[m]ultipliers in excess of this range… are not completely unusual." … ***Class Counsel's requested multiplier [of 1.75] is on the low end of this range, and is therefore reasonable.***" (Opinion at A31) (emphasis added).

BMW failed to demonstrate the criteria used by the District Court to award a multiplier was subsumed within its lodestar analysis. While Appellant includes a chart erroneously purporting to show where it alleges double counting of Class Counsels' time occurred, it never actually articulates how or where in its lodestar analysis the criteria at issue were misused. (Db28). Instead, it merely includes a footnote sending the reader to another section of the brief where BMW simply listed the New Jersey Rule of Professional Conduct 1.5(a) factors to determine a reasonable fee. Notably, BMW never actually demonstrates where in the Opinion these factors were actually used. What's more, BMW's chart omits *Gunter* factors two, three, and eight – innovative terms, only forty-five objectors, and review of similar cases – thereby admitting that those factors were not used in the lodestar analysis. These factors are a proper basis in-and-of themselves to award a fee multiplier. Class Counsel continues to expend time by ensuring that the Settlement

Agreement is properly executed and has also litigated two appeals, all of which further justifies the use of an enhancement multiplier.

### E. The Lodestar Enhancement was Well Within the Range of Similar Fee Enhancement Awards

The District Court's award of a 1.75 lodestar multiplier is well within the range of similar awards, including automotive defect cases that mirror this case in terms of time incurred litigating, number of class vehicles and benefits conferred. Although not a *Lindy* factor, comparing the proposed multiplier to similar awards provides context for measuring its reasonableness. The enhancement here falls well within that range of reasonableness. *See, e.g., In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. CV162765JLLJAD, 2018 WL 11413299, at *4 (D.N.J. Dec. 14, 2018) (automobile engine timing chain case where court awarded attorneys' fees of $8.65 million, representing a lodestar multiple of 1.8). Indeed, courts in this circuit routinely find in complex class actions that a lodestar multiplier of between one and four is fair and reasonable. *See, e.g., Doherty v. Hertz Corp.*, Civil No. 10–359 (NLH/KMW), 2014 WL 2916494, at *7 (D.N.J. June 25, 2014) (fees of $3,026,100. awarded after court concluded "a lodestar crosscheck similarly supports approval of the agreed upon fee which reflects a lodestar multiplier of 1.95, particularly in light of the fact that the Third Circuit and District Courts within this Circuit routinely approve of lodestar multipliers ranging from 1 to 4"); *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998), *cert. den.*, 525

U.S. 1114 (1998) (quoting *3 Newberg & Conte, Newberg on Class Actions*, § 14.03 at 14-5 (3d ed. 1992)).  Multipliers of 3 are deemed appropriate in the Third Circuit. *See In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 742 (3d Cir. 2001), *cert. den.*, 534 U.S. 889 (2001); *Milliron v. T-Mobile USA, Inc.*, Civil Action No. 08–4149 (JLL), 2009 WL 3345762, at *13 (D.N.J. Sept. 10, 2009), *as amended* (Sept. 14, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011) (court approved fees with lodestar multiplier of 2.21); *see also, In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ.03–0085 FSH, 2005 WL 3008808, at *17 (D.N.J. Nov. 9, 2005) (analyzing "recently approved multipliers" and stating that multiplier of 1.8 "is on the low end of the spectrum"); *In re Linerboard Antitrust Litig.*, No. MDL 1261, Civ.A. 98–5055, Civ.A. 99–1000, Civ.A. 99–1341, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004) (approving a 2.66 multiplier); *In re AremisSoft v. Cap. Securities Lit.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (approving a 4.3 multiplier); *Weiss v. Mercedes-Benz of No. Am., Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995), *aff'd*, 66 F.3d. 314 (3d. Cir. 1995) (approving a 9.3 multiplier).

While some of the above settlements may have involved a common fund, some do not.  Given the fact that this Court has held that, in connection with a class settlement agreement, it is only the fund in court that remains (*Gelis*, 49 F.4th at 381, citing to *Bryus,* 203 F.3d 238) and that fees pursuant to such agreement should be analyzed under the criteria set forth in *Lindy*, *Merola* and their progeny, the cases

31

above-referenced properly contextualize the reasonableness of the multiplier here.

**F.    The District Court Thoroughly Reviewed Class Counsel's Contemporaneous Billing Records together with Proposed Findings of Fact and then Convened Oral Argument on the Attorneys' Fee Request prior to Issuing a Well-Reasoned Fee Award Opinion**

BMW's appeal of litigation activities performed by Class Counsel over the course of this case and the resulting attorneys' fee entered in the District Court is best be summed up by William Shakespeare's character Queen Gertrude in *Hamlet*- "[BMW] doth protest too much, methinks."[12]  After erecting continuous roadblocks since day one to the orderly resolution of this case and disrupting the discovery process with endless unfounded objections and unindexed document dumps, BMW now argues Class Counsel spent too much time on this matter and/or the wrong personnel were assigned to certain unenumerated tasks.[13]

BMW's overly aggressive litigation strategy in this class action which unnecessarily increased its litigation costs backfired when confronted with experienced adversaries.  After engaging in a deliberate course of conduct designed

---

[12] *Hamlet*, Act III, Scene II.

[13] In several instances, as Judge Waldor noted in her Opinion, BMW offered no valid reason why fees incurred for certain activities should be reduced aside from the mere fact BMW subjectively believed the time allotted was unwarranted and/or was somehow too high.  This is not the standard by which attorneys' fee requests are reviewed.

to frustrate and wear down Class Counsel, BMW now complains the hours incurred by Class Counsel were excessive and task assignments improper.  This Court should also reject the narrative of BMW that Class Counsel somehow overstaffed, improperly delegated tasks and/or overbilled for their legal activities.  Judge Waldor, who had a front row center seat for what transpired over the entire course of the litigation, considered all of BMW's arguments concerning the lodestar calculation and rejected most.  For example, Class Counsel's appeal time and post-approval hours were not included by the District Court in the lodestar.[14]  Despite BMW's representations, this class action was not a mundane simple matter similar to a straight forward contract breach or slip and fall accident fully capable of being handled by an associate or paralegal.  This was a complex product liability class action involving dozens of interrelated components in a technically sophisticated direct-injected turbocharged engine with twin camshafts and variable valve timing. *See* CSAC at 18-25. (A81-A88).  In order to achieve proper trial preparation and case oversight, highly experienced attorneys with extensive automotive expertise

---

[14] Indeed, BMW's erroneous, reoccurring theme in opposing Class Counsel's fee request is this nationwide automotive products liability class action was a cakewalk requiring minimal effort that could have been handled mostly by low level support staff that in the end didn't produce a settlement providing substantial value to class members over what BMW voluntarily provided several months after the class action was filed.  BMW is just plain wrong on both assertions.

were required to devote substantial time and effort.[15]  Given the technical and legal issues involved, most matters were simply not susceptible to delegation to associates or office staff.

BMW refused to settle the underlying automotive class action involving critical engine components requiring expensive repairs affecting more than 575,000 of its vehicles until the attorneys' issue was resolved to its satisfaction.  These fee settlement machinations resulted in multiple lengthy fee mediations with an outside mediator (who settled the substantive class claims but was unable to resolve the fee issue) and Judge Waldor which eventually led to the "high-low" fee agreement of $1.5 to $3.7 million.  After contentious and drawn-out fee negotiations of its own making, BMW now also complains that Class Counsel excessively billed for the fee negotiation.

As the District Court correctly observed with respect to determining attorneys' fees, "[t]he essential goal . . . is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox. v. Vice*, 563

---

[15] This case involved high stakes litigation with more than a half million class vehicles and tens of millions of dollars on the line.  It is disingenuous for BMW to aggressively litigate this case with at least five experienced attorneys and then claim that Class Counsel involved too many partners or spent too much time opposing BMW's efforts.

U.S. 826, 838 (2011).[16]   (Opinion at A14).   Class Counsel's post-remand fee application satisfies this Court's criteria, as it was submitted in the form of contemporaneous time records and more. *See also* Class Counsel's FoFCoL and declarations.  (A168-A209).  It was "... specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Gelis,* 49 F.4th 379-80 (quoting *Rode,* 892 F.2d 1190).

BMW refuses to accept the findings of the District Court which thoroughly examined hundreds of pages of contemporaneous billing statements, reviewed the lengthy proposed findings of fact submitted by both parties, reviewed declarations from counsel and heard oral argument as part of a rigorous analysis of the appropriate attorneys' fees in this complicated product liability proceeding.  There

---

[16] BMW has not contested the use of the lodestar formula by the District Court in determining attorneys' fees. "As the Third Circuit observed, BMW has not challenged the use of the lodestar method, and so the Opinion did not address that aspect of the Order." (Opinion at A14).  BMW waived any potential argument the hourly rate of Class Counsel was excessive and resulted in over compensation. "In this case, the issue of Class Counsel's rates was not simply passed upon by the Third Circuit, it was not *raised* below by BMW. The issue is therefore barred from consideration at this stage." (emphasis in original). (*Id*. at A8).  The Supreme Court cautioned that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 424, 437 (1982).  Unfortunately, BMW has succeeded in doing just that.  After agreeing to allow the District Court to make a final determination of Class Counsel's attorneys' fees and then receiving a fee award it didn't like, BMW turned the fee process into time-consuming satellite litigation, twice.

can be no legitimate dispute Judge Waldor performed a thorough review of extensive billing records provided by Class Counsel in her fee analysis and that she was uniquely positioned to determine the appropriate measure of attorneys' fees for Class Counsel's extraordinary results in resolving this multi-state automotive products liability class action on a nationwide basis.[17] (Opinion at A14-A27).

On remand, Class Counsel submitted voluminous daily detailed timekeeping/billing records to the District Court. (A702-A982). In this current appeal, BMW generally contests the decision of the District Court to not reduce hours spent by Class Counsel and the lawyers assigned to the tasks performed. Having failed to contest Class Counsel's hourly rate (which would have been unsuccessful given Class Counsel's submissions and the supporting affidavit from a disinterested nationally known class action attorney who practices in New Jersey[18], BMW now attempts to collaterally attack the fee award by arguing inappropriate lawyers and staff were improperly tasked assignments. BMW specifically challenges Class Counsel time submitted for "Drafting Complaints (original/amended)"; "Case Development/Administration"; Motion

---

[17] The Settlement Agreement was an excellent result that is fair, reasonable, and adequate. The new 100K mileage limitation resulting from the Settlement was a 42.86% increase over the 70K warranty extension BMW implemented in late 2017 (three months after plaintiffs commenced suit). Plaintiffs' FoFCoL, ¶7 (A176).

[18] (A677-699).

Practice/Memoranda Drafting/Legal Research"; "Negotiation/Settlement Process"; and, "Discovery Activities."

As discussed *infra*, this Court should affirm the decision of the District Court in its refusal to reduce the hours expended by Class Counsel or the hourly rate for the various timekeepers as unwarranted just because BMW is unhappy with the fee award.

### 1.   The District Court Considered and Rejected BMW's Timekeeper Task Assignment Argument

BMW argues that although Judge Waldor was mandated to examine the entirety of Class Counsel's contemporaneous billing records, she abused her discretion in determining whether timekeepers were appropriately assigned certain tasks. More specifically, BMW apparently claims that the District Court should have investigated each of the thousands of reported timekeeping entries and described activities and made a determination for each entry whether the particular task should have been assigned to a partner, senior associate, associate, paralegal or secretary. In reviewing attorney fee awards, the Third Circuit gives considerable deference to the district court's fee methodology. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995). To do otherwise would turn each garden variety fee application into full-fledged lengthy and unnecessary satellite litigation, consuming judicial resources as well as time and resources of the litigants. After full consideration of the

mountain of evidence in the form of detailed time records and other papers submitted (including the opinion of the sole economic valuation expert, Kirk Kleckner, who rendered a written report (ECF# 113-114) and was deposed by BMW's counsel), Judge Waldor determined that a fee at the upper bound of the high-low agreement in the amount of $3.7 million was fully documented and appropriate. (Opinion at A30-A31).

### 2. The District Court Considered and Properly Approved Class Counsel's Time as Productive and Tasks Appropriately Assigned[19]

Out of the thousands of time entries, BMW cherry-picked certain entries to create the false illusion that much of Class Counsel's work was unnecessary or improperly billed because the tasks performed by partners should have been assigned to other less experienced timekeepers or office staff.[20] Litigation activities

---

[19] "[L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain as to both the result and the amount in fee… By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all he won and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 112 (9th Cir. 2008).

[20] On other occasions, BMW failed to identify specific improper billing aside from vague references. "Consistent with Class Counsel's representations as to the nature of this work, a review of Class Counsel's billing records does not indicate high-level personnel performed a significant amount of 'simple, unimportant, ministerial or routine' work, nor does BMW point to any time entries to the contrary." (Opinion at A18).

"where lead partners review discovery or spend time on other menial tasks because the partner's special knowledge of the case is required to adequately perform such tasks, [ ] may be billed at the partner's hourly rate." *Jefferson v. City of Camden*, 2006 WL 1843178, at \*12 (D.N.J. June 30, 2006); *see also Environsource, Inc. v. Horsehead Resource Dev. Co., Inc.*, 981 F. Supp. 876, 882 (S.D.N.Y. 1998). *Planned Parenthood of Cent. New Jersey v. Attorney General of State of New Jersey*, 297 F.3d 253, 267 (3d Cir. 2002) (quoting *Marisol A. v. Giuliani*, 111 F. Supp.2d 381, 395 (S.D.N.Y.2000)) recognized that "it would be unreasonable to expect attorneys to delegate every ministerial duty they perform because 'the time spent delegating the task could well exceed the time spent by the attorney' performing the task herself." There are situations where there is "an inability to delegate the task efficiently, perhaps because the learning curve renders effective delegation infeasible." *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 855 (3d Cir. 1994). These cases comport with the general principle that "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Planned Parenthood*, 297 F.3d at 270 (quoting *Washington v. Phil. County Ct. of Common Pleas*, 89 F.3d 1031, 1037-38 (3d Cir. 1996)).

This Court should not reduce Class Counsel's requested time and hourly rates predicated on BMW's unilateral unsupported subjective pronouncement of what

39

constitutes reasonable time for any activity conducted in this proceeding and who should perform a given task. This is particularly true where BMW cites to cases in support its position that do not involve a high-stakes, complex products liability class action with a myriad of issues any one of which could result in dismissal or preclude class certification. *See In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833 (bankruptcy proceeding concerning attorneys' fees under 11 U.S.C.A. § 329(a)) (at Db 36) and *Apple Corps. Ltd. v. International Collectors Soc.*, 25 F. Supp. 2d 480 (D.N.J. 1998) (civil contempt for violation of consent order). (Db 34). In contrast, *Gelis* is a consolidated class action involving three firms representing some 50 clients from diverse states of whom 20 were named plaintiffs and settlement class representatives. The three law firms representing plaintiffs here had to consider the interests of their respective clients, varying state consumer laws involving 13 states, highly technical mechanical engineering issues concerning engine component defects and other considerations requiring several lawyers to regularly closely cooperate in navigating the path forward. (A64-A104).

With respect to any of the mediation conferences convened in this case, there was never "the attendance of additional counsel representing the same interests as the attorney actually participating in a hearing [which] 'is wasteful and should not be included in a request for counsel fees from an adversary.'" *Apple Corps.*, 25 F. Supp.2d at 489 (quoting *Halderman*, 49 F.3d at 943). A reduction for duplication

40

"is warranted only if the attorneys are *unreasonably* doing the same work." *Johnson v. University College*, 706 F.2d 1205, 1208 (11th Cir.), *cert. denied*, 464 U.S. 994 (1983)) (emphasis in original).

Given their responsibilities owed to their respective clients, Class Counsel here were not "doing the same work." The District Court carefully analyzed time records and determined there was no unnecessary duplication of work. Putting aside the deference to make such findings of fact, BMW expressly agreed that these issues should be determined by the District Court. *See*, Settlement Agreement Art. X, § O (SA138).

### a.     Complaint Drafting

As discussed *supra*, this was a complex products liability class action requiring considerable pre-suit investigation and meticulous complaint drafting to defeat dismissal. In particular, BMW's pre-sale defect knowledge had to be plausibly alleged with particularity in order to defeat statutes of limitations and warranty defenses typically encountered in Rule 12(b)(6) motions to dismiss, *inter alia*. Common law fraud and state law consumer statutes of 13 states were also are required to be alleged with Fed. R. Civ. P. 9(b) specificity. *See generally* SCAC. (A64-A104).

This is simply not the type of case where a complaint can be downloaded from a form book by an associate attorney or paralegal. Class Counsel meticulously

41

drafted a total of three complaints that were cogent, well-researched as to specific vehicle engine component defects, manufacturer pre-sale knowledge and controlling law that survived dismissal under Rule 12(b)(6).  With respect to complaint drafting, the District Court Opinion recites:

> Aside from their length, the complaints are detailed and often highly technical in nature, asserting well over a dozen claims on behalf of various combinations of individual and subclass plaintiffs. The second amended complaint proceeds on behalf of nineteen individual plaintiffs from thirteen states and thirteen plaintiff subclasses and brings twenty counts on behalf of various combinations thereof.

(Opinion at A16).

Judge Waldor recognized the complaints were well-drafted and refused to reduce hours of Class Counsel for complaint drafting.  (Opinion at A16-A17).  In doing so, she compared the time spent by Class Counsel with the time in the case relied upon by BMW, *Rougvie v. Ascena Retail Grp., Inc.*, 2016 U.S. Dist. LEXUS 122910 (E.D. Pa. Sept. 12, 2016).  *Rougvie* counsel spent 73 hours drafting two largely identical complaints and billed approximately at a rate of 1.74 hours per pleading page and 3.48 hours for each page of the operational pleading.  Here, Class Counsel spent considerably ***less*** by comparison to BMW's comparator- respectively, 0.71 hours and 2.51 hours. (Opinion at A17).

As with many of BMW's fee objections, there is no objective basis for its contention Class Counsel spent excessive time on complaint drafting as well as other activities aside from BMW's unsupported subjective intuition.  BMW's opening

brief fails to cite a single case supporting its proposition that Class Counsel billed excessive hours for drafting the respective complaints.

### b.    Case Development / Administration

Case Development/Administration as practiced by Class Counsel here included vetting clients, regularly informing clients as to case status, acquiring and updating client information together with other ancillary activities.  The District Court on remand specifically addressed BMW's contention Class Counsel's activities were improperly tasked for performing case development and administration:

> Of note, BMW does not take specific issue with the number of hours billed here; only that they were billed at partner rates.  The Court agrees with Class Counsel that this objection is unfounded.  Litigation strategy is often the lifeblood of a case; as such, it makes sense for high-level partners to be performing these tasks.  The same is true of communications with class representatives.  Again, one of BMW's cited cases supports this conclusion. In *In re Vogue*, 92 B.R. 717 (Bankr. E.D. Mich. 1988), the court considered (but ultimately rejected) a challenge to "simple, unimportant, ministerial or routine tasks." *See id*. at 719. The court called these objections "unfair and unrealistic" since they "ignore[] what goes on in 'the real world'"; namely, that an "attorney assumes that he or she may be required to perform some simple tasks, while other tasks might require intense concentration; some communication might be casual, while other discussions might involve crucial negotiations. These are all balanced when an hourly fee is fixed." *Id*. Consistent with Class Counsel's representations as to the nature of this work, a review of Class Counsel's billing records does not indicate high-level personnel performed a significant amount of "simple, unimportant, ministerial or routine" work, nor does BMW point to any time entries to the contrary. BMW's objection to this category is therefore overruled.

(Opinion at A18).

Although BMW identified certain billing entry terms such as "organize" or "review" or "work" or "calendar," the use of these terms doesn't demonstrate the associated activities were improperly billed at partner rates when performed by partners.[21]    Judge Waldor considered and also rejected this argument in the Opinion.[22]

### c.    Motion Practice / Memorandum Drafting / Legal Research

Judge Waldor fully considered and rejected BMW's argument Class Counsel allegedly expended inordinate time on activities related to motion practice, memorandum drafting and legal research or that somehow "double counting" occurred.

> First, it appears that Class Counsel spent approximately 115 hours on the opposition.  As above, this number falls on the high end but is not

---

[21] Notably, BMW doesn't cite any specific time entries where "organize ... review ... calendar" were entered in billing materials but rather left it to the District Court (and this Court) to rummage through hundreds of pages of billing entries to determine whether time spent in these activities was warranted.  In the event this Court undertakes such an exercise, it will find that the complained of activities usually consisted of reviewing documents generated by the district court or BMW, organizing the material either electrically or in paper form and then calendaring events related to the document collectively recorded as a single time entry.

[22] "Finally, while BMW complains of certain entries by senior partners indicating "calendar" or similar administrative tasks, the billing records show that such items are one of several tasks included in a given entry, not a standalone entry for simply calendaring a date."  (Opinion at A24).

unreasonable considering the varied and complex issues raised in the dismissal motion.

*                    *                    *

Considering the complexity and breadth of issues raised in the motion, the Court finds the amount of time billed for opposing it is not unreasonable. *Cf. St. Joseph Abbey v. Castille*, 2014 U.S. Dist. LEXIS 183990, at *36-37 (E.D. La. Nov. 21, 2014) (fifty-four hours spent on thirteen-page opposition to twelve-page motion to dismiss yielding fifteen-page opinion, not unreasonable) Civil Action No. 10-2717 (E.D. La.), Dkt. No. 38, 42, 59.

(Opinion at A18-A19).

BMW once again failed to demonstrate the District Court erred or that certain complained of litigation activities were improperly accounted for or billed.[23]

### d.    Negotiation / Settlement Process

BMW agreed to pay Class Counsel attorneys' fees (which did not reduce benefits to class members) as part of the overall settlement and knew that Class Counsel were entitled to compensation for time spent negotiating their fees.[24]  Yet, BMW prolonged resolution of the attorneys' fee dispute by stonewalling the process as a negotiation tactic and complains when confronted with the invoice for the increased time incurred in negotiating a fee.  After calling the tune, BMW has to pay

---

[23] There is an overlapping of certain summary time chart categories where an activity could have been recorded in one of two categories but this doesn't evidence those activities were double billed or were otherwise non-compensable.

[24] As discussed, *supra*, BMW conditioned settlement of class claims on resolution of Class Counsel attorneys' fees.

the piper.[25]

The fact that some of the mediation sessions involved Class Counsel's fee is an appropriate event for billing purposes and is compensable. Class Counsel researched, drafted and submitted multiple mediation briefs. Three different firms represented their respective clients and were entitled to attend each mediation to protect their respective client interests and advocate for fees. As the District Court correctly observed Class Counsel billed approximately 172 hours for the mediation process, which included attending three separate mediation sessions in person, travel to and from the mediation preparing for the mediation including review of pertinent documents produced by BMW "to understand the scope of warranty payments made, how many vehicles would be included in the class, [and] the nature and extent of documentation required to be submitted by class members," providing mediation briefs and engaging in the "post-mediation tasks that are part and parcel of any such activity." (Opinion at A19-A20; SA17-SA20). Given the totality of the tasks engaged in for mediation, the District Court found that the hours were reasonable "[p]articularly considering that the mediation resulted in this case being resolved short of what otherwise could have been years of litigation, coupled with the breadth

---

[25] Apparently, BMW doesn't contest Class Counsel are entitled to the time spent negotiating their fee which BMW agreed to pay separately from class claims. A "party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application. *Planned Parenthood*, 297 F.3d at 268.

and complexity of the issues requiring resolution to bring the case to completion." [26] (Opinion at A20).

The fact three firms had representation at the mediation was proper given they each had clients in the case. BMW's counsel, who had one client at the mediation, also had multiple attorneys attend. "There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) (citing *Johnson*, 706 F.2d at 1208). The District Court correctly refused to reduce time incurred by Class Counsel for negotiation and settlement.

### e. Discovery

One BMW discovery tactic designed to wear down Class Counsel was to dump some 12,000 pages of documents on Class Counsel in response to multiple production requests "without the benefit of an index or other organization." (Opinion at A20). After deliberately causing Class Counsel to have to wade into a document swamp,

---

[26] Co-Class Counsel Thomas P. Sobran ("Sobran"), who attended from the Boston area to Princeton and Newark, New Jersey was essential in that he provided the technical expertise for remedial engine repairs and warranty extensions for case investigation, discovery, settlement of class claims and Class Counsel's attorneys' fees. (Opinion at A16).

BMW should not be heard to complain time spent by Class Counsel during discovery was somehow excessive. This is particularly true since many of these documents were highly technical in nature including technical design drawings with material specifications and dimensioning sent as individual pdfs that required opening each page separately.[27] In order to reassemble any given document, each relevant page had to be combined in a master file to view the complete document. These are hardly the type of documents that should be reviewed by an associate or paralegal.

## V.    CONCLUSION

Judge Waldor's decision awarding $3.7 million in attorneys' fees on remand though no doubt once again disappointing to BMW, fully satisfied the procedural and substantive methodology for awarding legal fees including use of a lodestar multiplier in this district and strictly adhered to the Third Circuit's mandate. The fee award was also within the parameters of the parties' "high-low" contractual agreement which implicitly contemplated a lodestar multiplier since BMW was aware of the lodestar of Class Counsel when the agreement was negotiated, which was well short of the agreement high of $3.7 million. This is a well-considered fee

---

[27] Co-lead Class Counsel Sobran handled the majority of the engineering issues in this case including case investigation and discovery. Sobran is a former factory-trained Volvo, BMW and Mercedes mechanic and service manager. (Opinion at A16; SA142-SA161).

award where the trial judge correctly exercised her discretion in setting the award and admitting expert testimony supporting the lodestar multiplier.

BMW's oft-repeated ritualistic incantation that the hours expended by Class Counsel were "unreasonable" or "unnecessary" simply has not been demonstrated. BMW's proposed unsubstantiated and questionable methodology of its own tailoring to uniformly reduce Class Counsel's compensable time and the overall attorneys' fee is simply unacceptable and wrong.  This Court should decline to follow BMW's analysis and reject any reduction of Class Counsel's well-earned fee. Accordingly, Judge Waldor's fee award should not be disturbed and should be affirmed in its entirety.

Dated: April 14, 2025                           Respectfully submitted,

**KANTROWITZ GOLDHAMER**
**& GRAIFMAN, P.C.**

*/s/ Gary S. Graifman*
Gary S. Graifman, Esq.
135 Chestnut Ridge Road
Montvale, New Jersey 07645
Telephone: (201) 391-7000
ggraifman@kgglaw.com

**THOMAS P. SOBRAN, P.C.**
Thomas P. Sobran, Esq.*
7 Evergreen Lane
Hingham, MA 02043
Telephone: (781) 741-6075
tsobran@sobranlaw.com

Bruce H. Nagel, Esq.
Robert Solomon, Esq.
**NAGEL RICE, LLP**
103 Eisenhower Parkway
Roseland, New Jersey
07068 Telephone: (973)
618-0400
bnagel@nagelrice.com
rsolomon@nagelrice.com

**\*** (*pro hac vice* application to be filed)

***Counsel for the Plaintiffs-Appellees***

## CERTIFICATION OF ADMISSION TO BAR

I, Gary S. Graifman, certify as follows:

1.    I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.    Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Dated:        April 14, 2025

By: /s/ *Gary S. Graifman*
Gary S. Graifman, Esq.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 12,258 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using the 2008 version of Microsoft Word in 14 point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the Vipre Virus Protection, version 3.1 has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: April 14, 2025

By: /s/ *Gary S. Graifman*
Gary S. Graifman, Esq.

52

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I certify that on this 14th day of April 2025, the foregoing Brief for

Defendant-Appellee was filed through CM/ECF system.

Dated:        April 14, 2025

By: /s/ *Gary S. Graifman*
Gary S. Graifman, Esq.