IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No. 24-2721

ARTEM GELIS ET AL,

*Plaintiffs - Appellees*,

vs.

BMW OF NORTH AMERICA, LLC

*Defendant – Appellant*.

On Appeal From The United States District Court

District Of New Jersey

Hon. Cathy L. Waldor, U.S.M.J., Presiding

District Court Case No:  2:17-cv-7386-CLW

## REPLY BRIEF ON BEHALF OF DEFENDANT – APPELLANT
## BMW OF NORTH AMERICA, LLC

### BUCHANAN INGERSOLL & ROONEY PC

Christopher J. Dalton
Argia J. DiMarco
Melissa J. Bayly
christopher.dalton@bipc.com
argia.dimarco@bipc.com
melissa.bayly@bipc.com
550 Broad Street, Suite 810
Newark, New Jersey 07102
Tel. No. (973) 273-9800

*Attorneys for BMW of North America, LLC*

**TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT IN REPLY .................................................1

II.  LEGAL ARGUMENT IN REPLY.....................................................2

     A.   Standard of Review. ..............................................................2

     B.   The Settlement Agreement Is Silent On The Use Of A Fee
          Multiplier.  It Did Not "Anticipate" Use Of A Fee Multiplier. ............3

     C.   Even If Use Of A Multiplier Was An Open Question, The
          District Court Nonetheless Erred In Using One..................................5

     D.   The District Court Failed To Conduct A Thorough Review Of
          Class Counsel's Fee Request...............................................10

III. CONCLUSION.....................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Corps Ltd. v. Intl. Collectors Society*,
25 F. Supp. 2d 480 (D.N.J. 1998) ...................................................................6

*Blum v. Stenson*,
465 U.S. 886 (1984) ..................................................................................5, 8

*Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*,
762 F.2d 272 (3d Cir. 1985), *rev'd in part on other grounds*, 478
U.S. 546 (1986)..............................................................................................12

*Excelsior Ins. v. Selective Ins. of Am.*,
696 F. Supp. 3d 15 (D.N.J. 2023) ...................................................................4

*Furst v. Einstein Moomjy, Inc.*,
182 N.J. 1 (2004) ............................................................................................6

*Gelis v. BMW of North America, LLC*,
49 F.4th 371 (3d Cir. 2022)............................................................................2

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ...........................................................................5

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)........................................................................................5

*In re Home Depot Inc.*,
931 F.3d 1065 (11th Cir. 2019) ......................................................................9

*Hunt Constr. Group, Inc. v. Hun School of Princeton*,
2012 WL 113606 (D.N.J. Jan. 13, 2012)........................................................6

*In re Johnson & Johnson Derivative Litig.*,
2013 WL 6163858 (D.N.J. Nov. 25, 2013) .....................................................8

*Kieffer v. Best Buy*,
205 N.J. 213 (2011) .........................................................................................4

*Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*,
    487 F.2d 161 (3d Cir. 1973) (*Lindy I*) ....................................5, 6

*Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*,
    540 F.2d 102 (3d Cir. 1976) (*Lindy II*) .................................5

*Ownbey v. Aker Kvaerner Pharms., Inc.*,
    2023 WL 4447014 .................................................6, 12

*Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*,
    478 U.S. 546 (1986)..............................................5

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010)..............................................5, 6

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) .....................................3

*Ursic v. Bethlehem Mines*,
    719 F.2d 670 (3d Cir. 1983) ....................................12

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
    2018 WL 11413299 (D.N.J. Dec. 14, 2018)........................9, 10

## I.     PRELIMINARY STATEMENT IN REPLY

In their opposition, Class Counsel complain that BMW NA engaged in "contentious and drawn-out fee negotiations." This criticism (apart from unfairly maligning BMW NA's reasonable efforts to defend itself) actually speaks to the heart of the issue on appeal: BMW NA did not agree to the excessive fees Class Counsel seek.

To accept Class Counsel's proposition that BMW NA agreed to the use of a fee multiplier to back into an award of $3.7 million would require this Court to ignore that BMW NA *explicitly refused* to pay that amount. BMW NA merely limited its maximum exposure to $3.7 million in order to resolve this case, a risk it found tolerable in light of the caselaw's mandate that a reasonable fee award is based on a reasonable hourly rate multiplied by a reasonable number of hours.

In calculating their lodestar, Class Counsel ignored this mandate, using partner-level attorneys to do associate- (or paralegal-) level work and recording excessive, redundant, and unnecessary time. Class Counsel justified these high rates and excessive hours by touting the quality of their work and the complexity of this case. But they then sought, and the District Court granted, application of a fee multiplier for *the same reasons*—the quality of their work and the complexity of the case. This duplicative award is inconsistent with the parties' Settlement Agreement and with Supreme Court jurisprudence regarding reasonable attorneys' fees.

To be clear, the litigation leading up to settlement was neither particularly complex nor unique. The parties settled the plaintiffs' run-of-the-mill consumer-fraud claims after limited document discovery and prior to depositions, expert discovery, class certification, summary judgment, and trial. And Class Counsel conveniently omit that this case settled not only as a result of their efforts, but due also to BMW NA's agreement to provide the class with the generous relief Class Counsel lauds. It does not follow from the parties' *joint* success in resolving this case that Class Counsel should receive a windfall at *BMW NA*'s expense.

As detailed in BMW NA's opening brief, the District Court abused its discretion in calculating Class Counsel's lodestar and erred, as a matter of law, by applying a fee multiplier.

## II.   LEGAL ARGUMENT IN REPLY

### A.   Standard of Review.

While Class Counsel delve into the standards a District Court should apply when considering what constitutes a reasonable fee under the lodestar method and whether a fee multiplier is warranted (Opp. Br. at 16-18), the parties do appear to agree that this Court reviews the District Court's fee award first by looking "anew (or *de novo*) at the legal standards used by the [District] Court to calculate a fee award," *Gelis v. BMW of North America, LLC*, 49 F.4th 371, 377 (3d Cir. 2022), then by examining whether the amount of the "fee award is within the district court's

discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 299 (3d Cir. 2005) (citation omitted) (quotation omitted).

Here, that means this Court reviews anew legal decisions the District Court made below, such as the formula for calculating the lodestar, whether it should employ a fee multiplier, and, if one is employed, the factors the District Court should consider. But the Court defers to the District Court's discretion on factual findings when calculating the lodestar, such as whether Class Counsel spent too much time on certain tasks or failed properly to allocate work; and, if the District Court finds— as a matter of law—that it should employ a fee multiplier, its application of the facts to the factors warranting, or not, a multiplier. The District Court below erred, as a matter of law, by applying a fee multiplier to Class Counsel's lodestar, which compounded its abuse of discretion in failing properly to scrutinize Class Counsel's lodestar.

### B. The Settlement Agreement Is Silent On The Use Of A Fee Multiplier. It Did Not "Anticipate" Use Of A Fee Multiplier.

The parties concur that the Settlement Agreement says nothing—one way or the other—about use of a fee multiplier. Class Counsel contend this silence is evidence that the Settlement Agreement anticipated use of a fee multiplier and indicates "BMW [NA]'s assent to a fee multiplier" (Opp. at 18-19) because, when the parties agreed to the $1.5 million to $3.7 million fee-award range, Class

Counsel's estimated lodestar was between those amounts.  Therefore, say Class Counsel, BMW NA must've implicitly agreed to using a fee multiplier and the District Court, and this Court, should insert a provision into the Settlement Agreement that BMW NA agreed to using a fee multiplier.  But "courts are not permitted to 'rewrite a contract for the parties better than or different from the one they wrote for themselves.'" *Excelsior Ins. v. Selective Ins. of Am.*, 696 F. Supp. 3d 15, 37 (D.N.J. 2023) (quoting *Kieffer v. Best Buy*, 205 N.J. 213, 223 (2011)).

Class Counsel assert that BMW NA "knew" during mediation they would seek a multiplier because their lodestar at mediation was $1.6 million and BMW NA agreed to a range of $1.5 to $3.7 million.  (Opp. Br. at 9.)  But Class Counsel ignore that the *low* end of the range was *below* their lodestar.[1]  Thus, if they couldn't convince the District Court they were entitled to their asserted lodestar of $1.6 million, they would still receive $1.5 million.

Silence does not equal assent.

---

[1] And, moreover, their lodestar *increased* after mediation anyhow.  BMW NA's agreement to a high-low range—but not a multiplier—didn't render inclusion of a high-end of $3.7 million a "nullity" any more than Class Counsel's agreement to a low-end of $1.5 million.  (Opp. Br. at 19-20.)  The parties simply agreed to bracketing their risk.

C.    **Even If Use Of A Multiplier Was An Open Question, The District Court Nonetheless Erred In Using One.**

Class Counsel argue that their fee application should be examined under the factors outlined in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) (*Lindy I*); *Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976) (*Lindy II*); and *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000). (Opp. Br. at 22-24.) Class Counsel summarize those factors (the *Lindy* Factors) as "(a) the number of hours spent; (b) [the] reasonable hourly rate for counsel; (c) [t]he contingent nature of success; and (d) the quality of counsels' work." (Opp. Br. at 22 n.8.) Class Counsel contend that the *Lindy* factors govern exclusively—rather than those the Supreme Court endorsed in *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Blum v. Stenson*, 465 U.S. 886 (1984); *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air*, 478 U.S. 546 (1986); and *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)—and permit (or even encourage) fee multipliers.

But *Purdue*—synthesizing the Supreme Court's statutory fee-award jurisprudence—instructs that district courts examining a fee application and considering a fee multiplier should keep in mind that:

1.    a "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious case;

5

2. the lodestar method yields a fee that is presumptively sufficient to achieve this objective;

3. the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorneys' fee, and a multiplier may not be awarded based on a factor that is subsumed in the lodestar calculation;

4. the applicant bears the burden of proving that a multiplier is necessary;

5. multipliers may be awarded in "rare" and "exceptional" circumstances; and

6. a fee applicant seeking an enhancement must produce "specific evidence" that supports the award.

559 U.S. at 552-54.  Class Counsel dispute *Purdue*'s applicability, arguing that its analysis is limited solely to statutory fee-shifting cases.  (Opp Br. at 24-27.)  In essence, Class Counsel argue that fee multipliers are *always* required under the *Lindy* factors.  That's not so.

A reasonable rate includes consideration of the time and labor required, the complexity of the issues, the experience of the attorneys, quality of work, and contingent nature of the case.  *See Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 22 (2004); *Ownbey v. Aker Kvaerner Pharms.*, Inc., 2023 WL 4447014 (D.N.J. July 11, 2023); *Hunt Constr. Group, Inc. v. Hun School of Princeton*, 2012 WL 113606 (D.N.J. Jan. 13, 2012).  A reasonable rate should "attract competent counsel," but should "not produce a windfall to attorneys." *Apple Corps Ltd. v. Intl. Collectors Society*, 25 F. Supp. 2d 480, 484 (D.N.J. 1998) (citation omitted).

Both parties here agree that the lodestar was the proper foundation upon which the District Court should have based its fee award.[2] Class Counsel assert they should receive a *multiplier* based on factors *already included* in the District Court's determination of whether their rates, and their hours, were reasonable. That is, Class Counsel's rates already incorporate litigation risk and the nature (and complexity) of the action—the same bases upon which they contend they're entitled to a fee multiplier. In essence, they argue that they take on contingent cases and do good and complex work, so they should have a substantial lodestar, and because they take on contingent cases and do good and complex work, they should get a multiplier. That's called double counting.

In its opening brief, BMW NA detailed at length how the District Court double counted numerous factors in applying the fee multiplier. Class Counsel's sole response is that BMW NA somehow failed to articulate how the listed criteria were used in the District Court's analysis. This is disingenuous.[3]

BMW NA directly quoted the factors the District Court used in applying the fee multiplier and compared them to the well-established factors used to determine

---

[2] Although BMW NA believes the District Court failed to adequately scrutinize the reasonableness of the hours worked, and by what level of attorney, when doing so.

[3] It also undermines Class Counsel's contention that their lodestar was reasonable, as Class Counsel imply that their lodestar was untethered to established reasonableness factors.

a reasonable lodestar fee, *i.e.*, the results obtained; the time and labor required; novelty of the issues; fixed versus contingent fee; and the experience and reputation of the attorneys. The District Court relied on each of these factors in its discussion of Class Counsel's billing records *and* in its decision to apply a multiplier. (A15-27).

But courts in the Third Circuit, and elsewhere, have repeatedly rejected this double counting. *See e.g. In re Johnson & Johnson Derivative Litig.*, 2013 WL 6163858, \*9 (D.N.J. Nov. 25, 2013) (citation omitted) (quotation omitted) (finding that any upward adjustment may not be based on factors already accounted for in the lodestar calculation, such as the novelty and complexity of the issues, the quality of the representation, and the skill of the attorneys because "those factors have been accounted for in determining the number of billable hours and the reasonable hourly rate"); *Blum v. Stenson*, 465 U.S. 886, 898-99 (1984) (upward adjustment generally may not be based on factors already accounted for in determining the original lodestar figure); *In re Johnson & Johnson Derivative Litig.*, 2013 WL 6163858, at \*9 ("[A] multiplier cannot be based on the 'novelty and complexity of the issues' because those factors have been accounted for in determining the 'number of billable hours' and the 'reasonable hourly rate.'") (citations omitted). As a sister circuit noted, "most of the factors used to justify an enhancement are already subsumed in the lodestar, so it would result in a windfall to count them again with a multiplier. This reasoning makes it just as unreasonable to double-count in a contractual fee-

8

shifting case as it is in a statutory fee-shifting case."  *In re Home Depot Inc.*, 931 F.3d 1065, 1082 (11th Cir. 2019).

Moreover, the few factors the District Court applied that may not have been subsumed in the lodestar analysis are not applicable here.  Class Counsel concedes that the only lodestar factors not repeated in the multiplier analysis are "innovative terms," "only forty-five objectors," and "review of similar cases."  (Opp. Br. at 29). But two of these three factors are entirely irrelevant.

First, this settlement did not include "innovative" terms.  Class Counsel refer (several times) to the settlement of prior timing-chain litigation in which they were involved, *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2018 WL 11413299 (D.N.J. Dec. 14, 2018), to support the amount of fees they were awarded, the effective rate that resulted, and the fee multiplier the District Court improperly applied below.  However, the settlement there—achieved years before the settlement here—involved the precise "innovative terms" on which the District Court relied in awarding the multiplier—a schedule for reimbursement based on vehicle age and mileage and a warranty extension.  Therefore, Class Counsel here argue for an enhancement based on "innovative terms" they'd used before.  *See* Motion for Preliminary Settlement Approval, DE 80-1, Case No. 2:16-cv-2765-JLL-JAD (May 14, 2018).

Nor did the District Court's fee award comport with "similar cases."  In fact, Class Counsel's argument, and the District Court's decision, relied on *only one* "similar case":  *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2018 WL 11413299 (D.N.J. Dec. 14, 2018).  And the fee award in that case is wholly incomparable to this one, as there the parties *agreed* to an attorneys' fee award of $8.4 million (and the effective rate that resulted).  It wasn't contested.  Moreover, the District Court acknowledges that Class Counsel in this case was awarded an additional $134 per hour than that in *VW* based solely on the class size, notwithstanding that Class Counsel in *VW* spent three times as many hours litigating that case.

The District Court's application of a multiplier, of any degree, was erroneous.

**D.    The District Court Failed To Conduct A Thorough Review Of Class Counsel's Fee Request.**

Class Counsel chastise BMW NA for its temerity in questioning some of the claimed fees, contend BMW NA made the case difficult by "erecting continuous roadblocks since day one to the orderly resolution of this case"—apparently by refusing immediately to settle it—and "disrupting the discovery process with … unindexed document dumps"[4] and "conduct designed to frustrate and wear down Class Counsel"—without citing a *single* record entry to support their distorted and

---

[4] Class Counsel received 12,000 pages of documents.  (A20; Opp. Br. at 47.)  That's about two banker's boxes for those old enough to remember—hardly a "dump."

unwarranted contentions.  (Opp. Br. at 32-33.)  Class Counsel should not have been surprised that, having filed a putative nationwide class action against BMW NA, BMW NA would defend itself and they'd actually have to litigate it.[5]

As BMW NA argued below (A533) and reiterated in its opening brief:

> Class Counsel's initial December 2020 submission sought compensation for 2,182.2 billing hours, of which 2,006 (or 92%) was billed by partners.  By the time of the May 2021 fee hearing, Class Counsel sought compensation for 2,713.4 billing hours, of which over 80% was billed by partners at partner rates.  (A533.)  Much of that reduction between December 2020 and May 2021 was due to the assignment of a paralegal to perform paralegal-level tasks.

(Moving Brief, at 36 n.15.)  Delegating only *8%* of billing to non-partners is simply improper, particularly given that two of the three firms involved employed non-partners (*e.g.*, associates).[6]

Class Counsel exaggerate both the complexity of the issues and the amount of work necessary to settle this case after limited paper discovery and three days of mediation.  Class Counsel would have this court believe that partner time—at partner

---

[5] They also indicate that BMW NA is responsible for "drawn-out fee negotiations" (Opp. Br. at 34)—again, apparently, because BMW NA wouldn't immediately accept Class Counsel's initial fee demand.

[6] Class Counsel also chide BMW NA for using "at least five experienced attorneys" while questioning Class Counsel's allocation of lawyers.  (Opp. Br. at 34 n.15.)  As Class Counsel know, BMW NA used only *one* partner for this matter and, while another partner participated in *one* judicial settlement conference, the remaining attorneys on the matter were *not* partners—and did much of the work.  But the larger issue is that BMW NA got to choose which lawyers it employed for which tasks; it didn't get to choose which lawyers (partners) plaintiffs allocated to which tasks (nearly all).

rates—was necessary for routine litigation tasks like drafting the (largely identical) complaints, limited motions and written discovery, conducting legal research, and reviewing documents. Courts have routinely found that such tasks are more appropriately completed by associates or at least billed at associate rates. *See e.g. Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) ("Routine tasks, if performed by senior partners…should not be billed at their usual rates…"); *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 762 F.2d 272, 279 (3d Cir. 1985) (awarding paralegal rates to experienced counsel for work which was "mundane or minor in character"), *rev'd in part on other grounds*, 478 U.S. 546 (1986); *Ownbey v. Aker Kvaerner Pharms., Inc.*, 2023 WL 4447014, at *16 (counsel's "time entries reflect an appropriate delegation of work whereby the partners, who accounted for approximately 20% of the fees, set the research agenda in light of the case's needs at the time and reviewed the results, while lower-billing associates or staff conducted the actual research, making up the other 80%.")

Class Counsel insist that these tasks could not be delegated to associates because this case required technical expertise inherent to issues of product liability. But this argument elides the fact that the claims in this case were based in consumer fraud and that much (if not most) of the work involved in litigating such claims is not highly technical. Indeed, the parties had not yet engaged in expert discovery when they reached a settlement. Perhaps initially identifying and understanding the

alleged defect may have required expertise, but drafting pleadings, conducting legal research, and reviewing documents are tasks associates routinely complete irrespective of the subject matter of the litigation. There is nothing unique about the claims in this case that rendered the work too complex for associate attorneys.

If, however, the Court were to accept Class Counsel's claim that 80% or more of the work was appropriately billed at partner rates because this case is "a high-stakes, complex products liability class action with a myriad of issues any one of which could result in dismissal or preclude class certification" (Opp. Br. at 40), then Class Counsel's contention merely underscores BMW NA's argument that the fee multiplier impermissibly double counts factors inherent in Class Counsel's lodestar. If partners needed to complete certain tasks that would otherwise have been assigned to associates due to their complexity, then Class Counsel's lodestar *has already accounted for* the complexity of the litigation.

The District Court abused its discretion by failing to properly and adequately scrutinize Class Counsel's fee application.

## III.    CONCLUSION

As explained in BMW NA's opening brief and reinforced above, the District Court abused its discretion in calculating Class Counsel's lodestar and erred, as a matter of law, by applying a fee multiplier. Accordingly, this Court should reverse

the District Court's application of a fee multiplier and reduce Class Counsel's lodestar—or clearly and explicitly direct the District Court how to do so.

Respectfully submitted,

*/s/ Christopher J. Dalton*
    Christopher J. Dalton, Esq.
    Argia J. DiMarco, Esq.
    Melissa J. Bayly, Esq.
    **BUCHANAN INGERSOLL & ROONEY PC**
    550 Broad Street, Suite 810
    Newark, New Jersey 07102-4582
      *Attorneys for Appellant*
      *BMW of North America, LLC*

Dated:  June 11, 2025

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,218 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

# <u>CERTIFICATE OF SERVICE</u>

On this date, I caused a copy of the foregoing Brief in further Support of

Appeal to be served via the Court's CM/ECF system upon:

Gary S. Graifman, Esq.
Jay I. Brody, Esq.
Kantrowitz, Goldhamer & Graifman, P.C.
210 Summit Avenue
Montvale, NJ 07645

Thomas P. Sobran, Esq.
Thomas P. Sobran, P.C.
7 Evergreen Lane
Hingham, MA 02043

Bruce H. Nagel, Esq.
Nagel Rice, LLP
103 Eisenhower Parkway
Roseland, NJ 07068

Attorneys for Plaintiff

/s Christopher J. Dalton
Christopher J. Dalton

Newark, New Jersey
June 11, 2025